IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT ALLEN RABE, § | | |
| TDCJ #1151504, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-06-1076 | |
| § | | |
| BRAD LIVINGSTON, *et al.*, § | | |
| Defendants. § | | |

## MEMORANDUM AND ORDER

The plaintiff, Robert Allen Rabe, is a state inmate in custody of the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"). He brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights. Rabe proceeds *pro se* and he requests leave to proceed *in forma pauperis*. After reviewing all of the pleadings as required by 28 U.S.C. § 1915A(a), the Court concludes that this case must be **dismissed** for reasons that follow.

**I.     BACKGROUND**

Rabe is currently in custody at TDCJ's Ellis Unit in Huntsville, Texas. Rabe sues TDCJ Executive Director Brad Livingston, Senior Executive Assistant Jeff Baldwin, and State Classification Coordinator Pamela Williams. Rabe alleges that these defendants have violated his civil rights by classifying him as a "medium custody" inmate pursuant to Administrative Directive 04.11 ("AD-04.11"), based on an incident that occurred while he was a juvenile in custody of the Texas Youth Commission.

Rabe complains that, by classifying him based on an incident that occurred when he was a juvenile, the defendants have made an arbitrary decision in violation of the Fourteenth Amendment and that they have further subjected him to "cruel and unusual punishment" in violation of the Eighth Amendment. Rabe adds that, by considering a juvenile indiscretion, his custodial classification also violates Texas law. He seeks prospective relief in the form of punitive damages and an injunction against the use of "juvenile records" against adult offenders. The Court concludes, however, that the complaint must be dismissed for reasons discussed below.

## II. STANDARD OF REVIEW

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"). Because the plaintiff is a prisoner who proceeds *in forma pauperis*, the PLRA requires that the district court scrutinize the basis of the complaint and, if appropriate, dismiss the case at any time if the court determines that the complaint "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also* 42 U.S.C. § 1997e(c) and 28 U.S.C. § 1915A(b). In conducting that analysis, a prisoner's *pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys and are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir. 1983).

"A district court may dismiss as frivolous the complaint of a prisoner proceeding IFP if it lacks an arguable basis in law or fact." *Geiger v Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). A review for failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir.) (citing *Moore v. Carwell*, 168 F.3d 234, 236 (5th Cir. 1999) (citation omitted)), *cert. denied*, 537 U.S. 1049 (2002). Under that standard, courts must assume that the plaintiff's factual allegations are true, and a dismissal is proper only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations. *See id*. (citations omitted).

### III. DISCUSSION

As noted above, the plaintiff complains that the defendants have violated his civil rights by classifying him as a medium custody inmate based on his entire record of incarceration, which includes an incident that occurred while he was a juvenile in custody of the Texas Youth Commission. As a result of this custodial classification, the plaintiff alleges that he has been denied the opportunity to attend college classes,[1] that he is only

---

[1] The Court assumes that this allegation is true for the sake of this order. Grievances attached to the complaint demonstrate, however, that the plaintiff was denied access to college-level courses not because of his custodial status, but because he did not pass the entrance
(continued...)

3

allowed to attend church programs for two hours on Sunday mornings, and that he is perceived by staff members as a "disciplinary problem" when in fact he has had only two major disciplinary cases and four minor ones. (Doc. #7, Memorandum, at 3, and exhibits). The plaintiff alleges, therefore, that prison officials have arbitrarily classified him at the medium-custody level and that this classification constitutes cruel and unusual punishment.

The plaintiff's civil rights complaint is governed by 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To establish liability under § 1983, a civil rights plaintiff must establish two elements: (1) state action, *i.e.*, that the conduct complained of was committed under color of state law, and (2) a resulting violation of federal law, *i.e.,* that the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *Baker v. McCollan*, 443 U.S. 137, 142 (1979); *see also Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002) (In short, "[s]ection 1983 provides a claim against anyone who, 'under color of' state law, deprives another of his or her

---

[1](...continued)
examination and because his projected release date of 2050 is far off. (Doc. #7, Exhibits, *Step 1 and Step 2 Grievances #2006029285*).

4

constitutional rights.") (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994)). To the extent that the plaintiff complains that his classification violates Texas law, his allegation fails to state a valid claim under 42 U.S.C. § 1983.[2]

The plaintiff in this case complains that classification officials have violated his constitutional rights by designating him as a medium custody inmate pursuant to Administrative Directive 04.11 in an arbitrary manner. The policy established by AD-04.11 requires that all offenders are assigned to a custody level that provides appropriate and adequate supervision and housing commensurate with the needs and requirements of the offender during his entire period of incarceration. (Doc. #7, Exhibit, *TDCJ Administrative Directive AD-04.11* (dated April 15, 2002)). The policy provides that custody assignments must be based on an offender's "total record." Under this policy, inmates who have committed "serious behavioral infractions," such as those who have previously escaped, taken a staff member hostage, displayed a history of defeating restraints, or a history of assaulting staff, are assigned a Security Precaution Designator ("SPD") to identify them as a "special management risk" for classification purposes. Hostage taking, in particular, is viewed as a serious risk under the policy. Unlike the designation for offenders with a history of escape, which takes into account only incidents that occurred less than ten years from the

---

[2] The plaintiff alleges, for example, that use of his hostage-taking incident is restricted by Article 58 of the Texas Code of Criminal Procedure, which requires a juvenile court to seal the files and records of a person adjudicated or taken into custody under Title 3 of the Family Code. The plaintiff does not show that he fits within this restriction, however, because he does not allege that the hostage-taking incident was actually prosecuted in a juvenile court.

date being reviewed, there is no "specific time limit" for situations in which an offender has taken a staff member hostage.

The plaintiff concedes that he has an SPD on his record for a hostage-taking incident that occurred while he was a juvenile in custody of the Texas Youth Commission in 1978. Exhibits to the complaint show that, during this incident, the plaintiff held a female correctional officer hostage at knife point. (Doc. #7, *Step 2 Grievance #2005131401*). Based on this incident, prison administrators reviewing the plaintiff's custodial classification have determined that the SPD for hostage taking "is appropriate." (*Id.*). The plaintiff complains, nonetheless, that the hostage-taking incident was remote in time and should not be used to keep him in "medium custody" status. He contends, therefore, that the classification decision made by the defendants has violated his constitutional rights.

A state prisoner does not have a constitutional right to be incarcerated in the prison of his choice. *See Meachum v. Fano*, 427 U.S. 214, 224 (1976); *see also Olim v. Wakinekona*, 461 U.S. 234, 245 (1983) (holding that a prisoner has no reasonable expectation of being incarcerated in a particular prison); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996) ("A prisoner has no constitutionally protected interest in a particular facility."). Indeed, the Supreme Court has determined that state prisoners have no constitutionally protected interest in their custodial classification as a general matter:

> The Constitution does not require that the State have more than one prison for convicted felons nor does it guarantee that the convicted prisoner will be placed in any particular prison if, as is likely, the State has more than one correctional institution. The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause,

6

> although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons. Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.

*Meachum v. Fano*, 427 U.S. 214, 224-25 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court recognized that a prisoner may have a liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Absent a showing that classification results in an "atypical and significant hardship," an inmate has no protectable liberty interest in his classification. *See, e.g., Wilkerson v. Stalder*, 329 F.3d 431, 435-36 (5th Cir.), *cert. denied*, 540 U.S. 966 (2003); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998); *Woods v. Edwards*, 51 F.3d 577, 581-82 (5th Cir. 1995).

The conditions of confinement that the plaintiff complains about, such as limitations on access to educational opportunities or religious services, do not constitute an atypical or significant hardship in relation to the ordinary incidents of prison life. *Compare Wilkinson v. Austin*, — U.S. —, 125 S. Ct. 2384, 2389, 2394 (2005) (holding that transfer to a "supermax" prison "imposes an atypical and significant hardship under any plausible baseline" because "[conditions] at [the prison] are more restrictive than any other form of

7

incarceration in Ohio"). Under these circumstances, "[c]lassification of prisoners is a matter left to the discretion of prison officials," who must have "'broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status.'" *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990) (citation omitted). "Prison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order." *Id*. at 1251 (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). Absent a showing that prison officials have abused their discretion, a federal court should be "loathe to interfere with custodial classifications established by prison officials." *Whitley v. Hunt*, 158 F.3d 882, 890 (5th Cir. 1998).

The pleadings in this case show that the plaintiff took a female correctional officer hostage at knife point while he was incarcerated, which fits within the SPD definition for hostage taking under the policy at issue (AD-04.11). The policy contains procedures for periodic review of classification and for removing the SPD identifiers where inmates are within reach of a firm release date, where the inmate is serving a non-aggravated sentence, or where "extraordinary circumstances" are deemed present by the Unit Classification Committee. (Doc. #7, Exhibit, *TDCJ Administrative Directive AD-04.11* at IV(A)). The plaintiff does not allege or show that he fits within any of these criteria. Although the plaintiff's hostage-taking incident is remote in time, the Court notes that the plaintiff has recently returned to state prison following a conviction in the 292nd District Court of Dallas County, Texas, for aggravated robbery with a deadly weapon. *See Rabe v. State*, No. 08-03-00153-CR, 2004 WL 3017682 (Tex. App. — El Paso, Dec. 30, 2004, pet. ref'd). The

plaintiff received a sentence of forty-eight years in prison in that case. *See id*. Under these circumstances, the plaintiff fails to demonstrate that prison officials have abused their discretion with regard to his custodial classification. Likewise, he fails to allege that the defendants were deliberately indifferent to his health or safety for purposes of making an Eighth Amendment claim. Because the plaintiff fails to articulate a violation of the Eighth Amendment or the Fourteenth Amendment, this case must be dismissed because the complaint lacks an arguable basis in law and otherwise fails to state a valid claim.

**IV.    CONCLUSION**

Based on the foregoing, the Court **ORDERS** as follows:

1. The plaintiff's request for leave to proceed *in forma pauperis* (Doc. #3) is **GRANTED**.

2. The TDCJ Inmate Trust Fund is **ORDERED** to deduct funds from the inmate trust account of Robert Allen Rabe (TDCJ #1151504) and forward them to the Clerk on a regular basis, in compliance with the provisions of 28 U.S.C. § 1915(b), until the entire filing fee ($250.00) has been paid.

3. The plaintiff's complaint is **DISMISSED** with prejudice, under 28 U.S.C. § 1915(e)(2)(B), as frivolous and for failure to state a claim.

4. The plaintiff's motion for appointment of counsel (Doc. #4), his motion for a preliminary injunction (Doc. #5), and his motion for production of documents (Doc. #6) are **DENIED**.

**The Clerk is directed to provide copies of this order to the parties; to the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; to the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas, 77342-0629, Fax**

**Number (936) 437-4793; and to the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Betty Parker.**

SIGNED at Houston, Texas, on **April 5, 2006.**

Nancy F. Atlas
United States District Judge